UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONALD R. COLSON,

                        Plaintiff,

-against-

ANTHONY J. ANNUCCI, *et al.*,

                        Defendants.

23-cv-00654 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Ronald Colson, an inmate proceeding *pro se*, brings this action against Defendants Commissioner Anthony Annucci, Superintendent Michael Capra, Sergeant Israel Sanchez, Correctional Officer Dalton Beadle, Correctional Officer Knika Green, Correctional Officer Alfred Ross, Correctional Officer Raymond Ortiz, Senior Offender Rehabilitation Counselor Jonia Manuel, Director of Special Housing Unit Don Venettozzi, and the State of New York. (ECF No. 2.) Plaintiff alleges violations of the First Amendment, the Fourth Amendment, and the Fourteenth Amendment via 42 U.S.C. § 1983 ("Section 1983"). (ECF No. 2.)

    Presently pending before the Court is Defendants Capra, Sanchez, Beadle, Green, Ross, Ortiz, Manuel, and Venettozzi's (together, the "Moving Defendants") motion to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(6). (ECF No. 32.) For the following reasons, the Moving Defendants' motion is GRANTED in part and DENIED in part.

## FACTUAL BACKGROUND

    The following facts are drawn from the Complaint ("Compl.", ECF No. 2.) and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On July 18, 2019, Plaintiff, an inmate housed at Sing Sing Correctional Facility in Ossining, New York, was subjected to a strip search by Beadle, Sanchez, and a non-party "John Doe" without the superintendent's express permission or probable cause. (Compl. ¶¶ 19.) Plaintiff was then escorted to the facility's infirmary to be placed on a special contraband watch. (*Id*. ¶ 20.) While entering the infirmary's elevator, Sanchez bent over to inspect what appeared to be plastic containing a green leafy substance on the elevator floor and directed Green to collect it. (*Id*. ¶¶ 22-23.)

As Plaintiff was escorted to the second floor of the infirmary to enter the contraband watch room, Beadle discovered more green leafy substance on the second floor and directed Ross to collect it and hand it over to Sanchez. (*Id*. ¶¶ 24-25.) Upon entering the contraband watch room, Plaintiff was subjected to another strip search. (*Id*. ¶ 26.)

On July 21, 2019, Plaintiff was served with a misbehavior report charging him with infractions of refusing direct order, contraband, drug possession, false statements or information, and smuggling after his return from the contraband watch. (*Id*. ¶ 27.) On August 2, 2019, Plaintiff's initial Tier III hearing occurred. (*Id*. ¶ 29.) Employee witnesses, when testifying, allegedly provided contradictory testimony concerning the chain of custody for the contraband. (*Id*.) The hearing was adjourned and recommenced on September 12, 2019, during which all previous employee witnesses allegedly changed their testimony and Ross and Green denied any knowledge of the incident. (*Id*. ¶ 33.)

On September 30, 2019, Manuel found Plaintiff guilty of all charges. (*Id*. ¶ 34.) Plaintiff was sentenced to 45 days in the Special Housing Unit ("SHU") without access to visitation, packages, commissary, or phone.[1] (*Id*. ¶ 35.) On October 1, 2019, Plaintiff submitted a request for

---

[1] Plaintiff states that he was sanctioned to "45 days" in what the Court believes to be the Special Housing Unit. Because of what appears to be a printing error, Plaintiff's exact allegation is not discernible.

discretionary review, but Capra denied it. (*Id*. ¶ 36.) On October 9, 2019, Plaintiff filed an administrative appeal to Venettozzi, who on December 16, 2019, reversed the hearing disposition and ordered a rehearing. (*Id*. ¶¶ 37-38.) On December 17, 2019, Plaintiff was served with another misbehavior report, which was allegedly different from the report Plaintiff previously received. (*Id*. ¶ 40.) On January 6, 2020, after a rehearing, all charges against Plaintiff were dismissed. Plaintiff was held in the SHU from January 6, 2020 to January 28, 2020 without any sanctions. (*Id*. ¶ 44.)

## PROCEDURAL HISTORY

Plaintiff initiated this action on January 12, 2023. (ECF No. 2.) On March 28, 2023, Defendant Anthony Annucci was terminated for lack of personal involvement. (ECF No. 7.) On August 25, 2023, Defendants Capra, Sanchez, Beadle, Green, Ross, Ortiz, Manuel, and Venettozzi submitted a motion to dismiss (the "Motion" or "Mot.", ECF No. 32.) On November 29, 2023, Plaintiff filed an opposition (the "Opposition" or "Opp.",the ECF No. 28.) On December 22, 2023, the Moving Defendants submitted a reply in further support of the Moving Defendants' motion to dismiss ("the Reply", ECF No. 34.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. In considering a 12(b)(6) motion, a court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's

favor, but a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). A court also need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id*.

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. V. Sum Holding L.P.*, 949 F. 2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12-CV-6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013). Where a plaintiff proceeds *pro se*, the court must construe the complaint liberally and interpret it to "raise the strongest arguments that [it] suggest[s]." *Askew v. Lindsey*, No.15-CV-7496(KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (quoting *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013)). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d, 555, 559 (S.D.N.Y. 2013)). "[M]ere[] conclusory allegations masquerading as factual conclusions…are insufficient to defeat a motion to dismiss." *Jackson v. Cnty of Rockland*, 450 Fed. Appx. 15, 18, 19 (2d Cir. 2011) (citation omitted). Therefore, while the Court must "draw the most favorable inferences that [a *pro*

*se* plaintiff's] complaint supports, [it] cannot invent factual allegations that [a *pro se* plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted).

## DISCUSSION

Plaintiff asserts claims against Defendants Sanchez, Beadle, Green, and Ross for violations of the First Amendment, against Defendants Sanchez and Beadle for violations of the Fourth Amendment, and against all Moving Defendants for violations of procedural due process under the Fourteenth Amendment. (Compl. ¶¶ 46-55.) The Moving Defendants argue that Plaintiff fails to allege enough facts that would state a claim.

### I.     First Amendment Retaliation Claim

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate . . . (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks omitted). "To establish an adverse action in the prisoner context, the retaliatory conduct must be such that it would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" *Kotler v. Boley*, 2022 WL 4589678, at *2 (2d Cir. Sept. 30, 2022) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)) (internal quotation marks omitted).

Here, Plaintiff alleges that Defendants Sanchez, Beadle, Green, and Ross contributed to his confinement by manufacturing charges against him in retaliation for Plaintiff utilizing the New York State Department of Corrections and Community Supervision's grievance process and contributed to his confinement. (Compl. ¶ 50.) Since the filing of grievances is constitutionally protected, Plaintiff meets the first element. *Thomas v. DeCastro*, 2019 WL 1428365, at *11

(quoting *Graham v. Henderson*, 89 F.3d 75, 77 (2d Cir. 1996)). However, Plaintiff fails to allege sufficient facts that would satisfy the second and third elements.

Concerning the second element, Plaintiff fails to allege an adverse action since Plaintiff fails to specify his actions before he was charged. Plaintiff generally alleges that he "protest[ed] the legality of the [initial] search" and "protested the need to be placed on a contraband watch" (Complaint ¶¶ 20, 21.) Beyond this, Plaintiff does not specifically allege what action he took before being served with a misbehavior report "charging him with infractions of refusing direct order, contraband, drug possession, false statements or info and smuggling." (*Id.* ¶ 27.)  Whether Defendants charged Plaintiff for his wrongdoing or in retaliation against Plaintiff for using the grievance process is not sufficiently pled from the allegations made in the Complaint.

Even if the Court assumes that Defendants' actions constitute adverse action, Plaintiff does not meet the third element. To satisfy the third element, Plaintiff's "allegations must be sufficient to support the inference that his filing of grievances played a substantial part in the adverse action" *Davis*, 320 F.3d at 353 (internal quotation marks omitted). Plaintiff, without providing the context of the filing or the content of the grievances, does not allege facts that would establish a causal connection between the protected conduct and the adverse action. Therefore, even viewed in Plaintiff's favor and in recognition of Plaintiff's *pro se* status, the factual allegations do not allow the inference that Defendants Sanchez, Beadle, Green, and Ross retaliated against Plaintiff for utilizing the grievance process. Accordingly, Plaintiff's First Amendment claim must be dismissed. Plaintiff is granted leave to amend to plead additional details regarding protected activity he took and the adverse action allegedly taken in response.

    **II.**    **Fourth Amendment Claim**

"[T]he Fourth Amendment . . . requires all searches conducted within a prison, including strip searches, to be reasonable." *Holland v. City of New York*, 197 F. Supp. 3d 529 (S.D.N.Y. 2016). In deciding whether a strip search is reasonable, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id*. at 542 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559). A search is unconstitutional under the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Satchell v. Molina*, 23-CV-11119 (LTS), 2024 WL 3226659, at *2 (S.D.N.Y. June 21, 2024) (quoting *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006)) (internal quotations omitted).

Additionally, "it is unconstitutional to conduct a second strip search shortly after a first strip search when the inmate has been supervised for the intervening time and has had no opportunity to obtain or conceal contraband." *Jones v. City of New York*, 2020 WL 1644009, at *12 (S.D.N.Y. Apr. 12, 2020). In *Jean-Laurent v. Wilkerson* where the plaintiff, an inmate in a state correctional facility, was subjected to a second strip search shortly after a strip search in response to a stabbing at the prison, the Court held that the second strip search violated the Fourth Amendment. According to the *Jean-Laurent* Court, because the plaintiff was under constant supervision by the defendants and had no opportunity to acquire contraband from the time of the first strip search to the second, the second strip search served no legitimate correctional purpose and was thus unreasonable. *Jean-Laurent*, 438 F. Supp. 2d at 323.

The facts here are substantially similar to *Jean-Laurent*. Plaintiff was subjected to a second strip search shortly after the initial strip search, during which no contraband was found. (Compl. ¶ 21.) Plaintiff was placed back into full restraints to be escorted to the infirmary after the first strip search and thus had no opportunity to acquire contraband between the first strip search and the

second strip search. In addition, although the alleged contraband was found in Plaintiff's vicinity, the Complaint does not indicate that the contraband found on the elevator floor and behind the pantry door on the second floor of the infirmary was connected to Plaintiff in any way. Therefore, while the first strip search may be held as a "reasonable security measure within a correctional facility" as the Moving Defendants allege, the second search was unreasonable given the circumstances. (ECF No.2.) *See Hodges v. Stanley,* 712 F.2d 34, 36 (2d Cir. 1983) (holding that inmate stated a constitutional claim where "[t]he second search took place shortly after the first" while the inmate was under "continuous escort" thus rendering the second search "unnecessary"); *N.G. v. Connecticut*, 382 F.3d 225, 234 (2d Cir. 2004) (noting that second search of detainee was unnecessary where there was no "unsupervised opportunity to acquire contraband"); *George v. City of New York*, No. 12 CIV. 6365 PKC JLC, 2013 WL 5943206, *8 (S.D.N.Y. Nov. 6, 2013) (denying motion to dismiss plaintiffs' claim of Fourth Amendment violation where strip search served no legitimate penological purpose); *Rodriguez v. Burnett,* No. 22-CV-10056 (PMH), 2024 WL 1466880, *4 (S.D.N.Y. Apr. 4, 2024) (same). Therefore, the motion to dismiss Plaintiff's Fourth Amendment claim violation is denied.

### III. Fourteenth Amendment Procedural Due Process Claim

"To present a procedural due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that defendant(s) deprived him of that interest as a result of insufficient process." *Johnson v. Schiff*, 2019 WL 4688542, at *19 (S.D.N.Y. Sept. 26, 2019) (quoting *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004)) (internal quotation marks omitted). "Prison discipline implicates a liberty interest only when it imposes atypical and significant hardship on the inmate in relation to the ordinary incident of prison life." *Id*. (quoting *Ortiz*, 380 F.3d at 654) (internal quotation marks omitted). Factors relevant to determining whether the plaintiff endured such

hardship include (1) the effect of disciplinary action on the length of prison confinement, (2) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation imposed compared to discretionary confinement. *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

"[R]estrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and . . . require proof of conditions more onerous than usual." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) (citing *Colon v. Howard*, 215 F.3d 227, 231-32 (2d Cir. 2000)). "A period of confinement under typical SHU conditions lasting longer than 305 days . . . triggers a protected liberty interest, whereas a period . . . between 101 and 305 days may trigger a protected liberty interest, depending on the specific conditions of confinement." *Gonzalez v. Hasty*, 802 F.3d 212, 223 (2d Cir. 2015). Here, Plaintiff's Complaint alleges that he was sanctioned to 45 days in the SHU with no access to visitation, packages, commissary, or phone. (Compl. ¶ 35.) Plaintiff fails to allege any facts showing unusually onerous conditions that would raise a liberty interest in his complaint.[2] Even if this Court were to take Plaintiff's allegation in his opposition that he spent 135 days in confinement until January 28, 2020 as true, the duration still would not trigger a protected liberty interest since Plaintiff does not show he suffered "atypical and significant hardship." Therefore, Plaintiff does not allege sufficient facts to state a viable procedural due process claim and Plaintiff's Fourteenth Amendment violation claim must be dismissed. *Frazier v. Coughlin*, 81 F.3d 313, 318 (2d Cir. 1996) (dismissing procedural due process claim, noting that "since [Plaintiff] failed to establish he had a protected liberty interest [regarding] confinement . . . he cannot assert a claim that he was denied due process in the

---

[2] While the Complaint does not specify whether Plaintiff served the 45 days, Plaintiff in his opposition states that he did.

procedures that confined him there"); *see also Uzzell v. Scully,* 893 F. Supp. 259, 263 (S.D.N.Y. 1995) (granting summary judgment against Plaintiff's procedural due process claims, noting that "no liberty interest was invoked and thus he was not deprived of procedural due process"). Plaintiff is granted leave to amend to allege further details that might demonstrate Plaintiff suffered a deprivation of a protected liberty interest.

Because Plaintiff fails to establish a protected liberty interest and Defendant Capra is associated with Plaintiff's Fourteenth Amendment procedural due process claim, the Court needs not address whether Plaintiff shows Defendant Capra's personal involvement.[3]

### IV. Whether Defendants Are Entitled to a Qualified Immunity Defense

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether qualified immunity applies, the court considers: "(1) whether the plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established at time of defendant's alleged misconduct; (3) even if the right was clearly established, whether it was objectively reasonable for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 133-34 (2d Cir. 2010)).

Here, the Court must decide whether Defendants Sanchez and Beadle can rely on a qualified immunity defense against Plaintiff's Fourth Amendment claim. "The right to be free from

---

[3] "To establish a defendant's individual liability in a § 1983 suit, plaintiff must show defendant's personal involvement in the alleged constitutional deprivation." *Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)).

unreasonable searches . . . is a clearly established constitutional right." *Moore v. Hearle*, 639 F. Supp. 2d 352, 359 (S.D.N.Y. 2009). Here, as mentioned, because Plaintiff was subjected to another strip search shortly after a strip search and had no opportunity to obtain contraband from the time of the first strip search to the second, the second strip search was unreasonable. Therefore, Plaintiff has alleged sufficient facts making out violation of a constitutional right that was clearly established at the time of Defendants' alleged misconduct.

With regard to the third consideration, "[a]n officer's actions are objectively reasonable if a reasonably competent officer would have acted the same way under similar circumstances." Kraft v. City of New York, 696 F. Supp. 2d 403, 419 (S.D.N.Y.), *aff'd*, 441 Rd. Appx. 24 (2d Cir. 2011) (unpublished). Since qualified immunity is an affirmative defense, "the defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time. *Fernandez v. City of New York*, 457 F. Supp. 3d 364 (S.D.N.Y. 2020) (quoting *Tellier v. Fields*, 280 F. 3d 69, 84 (2d Cir. 2000). Defendants assert that "Defendants are still entitled to qualified immunity because it would not have been clear to reasonable officials that the actions Defendants took violated Plaintiff's clearly established federal rights." (Motion at 12). Defendants further acknowledge that "'[o]nly Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established.'" (*Id.*) (quoting *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004). Following Defendants' opposition reasoning, their argument is unavailing. Given that precedent in the Second Circuit discussed *supra* existing at the time of the Defendants' alleged conduct held that strip searches of the kind Plaintiff was subject to violates Fourth Amendment rights, it follows that Defendants are not entitled to qualified immunity as such precedent "would [] have [made] clear to reasonable officials that the actions Defendants took violated Plaintiff's clearly established rights." (Motion at 12).

Given Defendants do not show that a reasonably competent officer would have acted the same way if a plaintiff were subjected to a strip search and no contraband was found, they fail to show that the challenged act was objectively reasonable. *See Dannett v. Conrad*, No. 3:23CV1598, 2024 WL 3718295, *3 (D. Conn. Aug. 8, 2024) (allowing claim of Fourth Amendment violation to proceed against Defendant correction officer in his individual capacity where strip search "exceeded a legitimate penological goal"). Therefore, Defendants Sanchez and Beadle are not entitled to a qualified immunity defense against Plaintiff's Fourth Amendment claim.

## CONCLUSION

For the foregoing reasons, the Court Defendants' motion to dismiss Plaintiff's First Amendment violation claim and Fourteenth Amendment violation claim is granted without prejudice and is denied as to Plaintiff's Fourth Amendment violation claim. Defendants are not entitled to a quality immunity defense as to Plaintiff's Fourth Amendment violation claim. Plaintiff is granted leave to file an amended pleading by October 10, 2024. Plaintiff is advised that the Amended Complaint will replace, not supplement, the Complaint, and so any claims that he wishes to pursue must be included in, or attached to, the Amended Complaint. Should Plaintiff file an Amended Complaint, the Defendants are directed to answer or otherwise respond by October 31, 2024. If Plaintiff fails to file an Amended Complaint within the time allowed, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 32, to mail a copy of this Opinion to *pro se* Plaintiff at the address on ECF and to show service on the docket.

Dated: August 27, 2024  
      White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____
Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been assigned)

-against-

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

_____
_____
_____
_____
Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

## I. LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐ Violation of my federal constitutional rights

☐ Other: _____

## II. PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____
First Name          Middle Initial          Last Name

_____
State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____
Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____
Current Place of Detention

_____
Institutional Address

_____
County, City                    State                    Zip Code

## III. PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other: _____

## IV. DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name     Last Name     Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City     State     Zip Code

Defendant 2:

First Name     Last Name     Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City     State     Zip Code

Defendant 3:

First Name     Last Name     Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City     State     Zip Code

Defendant 4:

First Name     Last Name     Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City     State     Zip Code

## V.   STATEMENT OF CLAIM

Place(s) of occurrence:

Date(s) of occurrence:

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_____          _____
Dated                                                            Plaintiff's Signature

_____          _____
First Name            Middle Initial                Last Name

_____
Prison Address

_____
County, City                              State                           Zip Code

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6