USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __6/9/2026__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RONALD COLSON,

                                    Plaintiff,

                    -against-

SGT. SANCHEZ and C.O. BEADLE,

                                    Defendants.

23-CV-654 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Ronald Colson, proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983 against Defendants Sergeant Israel Sanchez and Correction Officer Dalton Beadle (collectively, "Defendants") on his remaining Fourth Amendment claim arising from an alleged second strip search conducted on July 18, 2019, in the contraband watch room at Sing Sing Correctional Facility.[1] (Compl., ECF No. 2.)

Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rules of Civil Procedure 56(a). (Dfts. Mot., ECF No. 80.) For reasons set forth below, Defendants' motion is GRANTED in its entirety.

---

[1] Plaintiff originally asserted claims under the First, Fourth, and Fourteenth Amendments. By Opinion and Order dated August 27, 2024, the Court dismissed Plaintiff's First Amendment retaliation claim and Fourteenth Amendment procedural due process claim without prejudice, but denied dismissal of Plaintiff's Fourth Amendment claim. (Former Opinion at 12, ECF No. 35.) Plaintiff was granted leave to file an amended complaint by October 10, 2024. (*Id.*) Plaintiff did not do so. Accordingly, by Order dated November 1, 2024, the Court dismissed the First and Fourteenth Amendment claims with prejudice and terminated all defendants except Sanchez and Beadle. (Order, ECF No. 37.)

1

**BACKGROUND**

### I.     Factual Background

The following facts are drawn from the parties' Rule 56.1 submissions[2], Plaintiff's sworn affidavit, and the record. (Dfts. 56.1, ECF No. 82; Pltf. Aff., Opp., 56.1 Resp. & Counterstatement, ECF No. 79.) They are undisputed unless otherwise noted.

At all relevant times, Plaintiff Ronald Colson was incarcerated in DOCCS custody and housed at Sing Sing Correctional Facility. (Dfts. 56.1 ¶ 1; Pltf. 56.1 Resp. ¶ 1.) On or about July 17, 2019, Plaintiff was issued misbehavior reports related to alleged contraband possession, though Plaintiff disputes the date those reports were issued. (Dfts. 56.1 ¶ 2; Pltf. 56.1 Resp. ¶ 2; Luedtke Decl. Ex. A, 201:10–202:20, ECF No. 81.) The following day, Plaintiff was confined in the Special Housing Unit ("SHU") after DOCCS employees allegedly recovered contraband from his person on July 17, 2019. (Dfts. 56.1 ¶ 3; Pltf. 56.1 Resp. ¶ 3.)

At approximately 10:55 a.m. on July 18, 2019, Defendant Sanchez and non-party Correction Officer Vicente came to Plaintiff's cell and searched it, recovering no contraband. (Dfts. 56.1 ¶¶ 4–5; Pltf. 56.1 Resp. ¶¶ 4–5.) Sanchez then ordered that Plaintiff be strip searched; no contraband was recovered from that search either. (Dfts. 56.1 ¶ 6; Pltf. 56.1 Resp. ¶ 6.) Sanchez obtained approval from the watch commander to place Plaintiff on contraband watch in the infirmary. (Dfts. 56.1 ¶ 7; Pltf. 56.1 Resp. ¶ 7.) Defendants Sanchez and Beadle escorted Plaintiff to the contraband watch room; Defendants state that non-party Correction Officer Ross participated in the escort, which Plaintiff disputes. (Dfts. 56.1 ¶ 8; Pltf. 56.1 Resp. ¶ 8; Luedtke Decl. Ex. A, 142:24–143:23, 153:16–153:23, 168:19–168:25.) During the escort, Sanchez discovered a green leafy substance

---

[2] Plaintiff's sworn affidavit includes his affidavit, his response to Defendants' Rule 56.1 Statement, and his opposition to Defendants' motion for summary judgment. (*See* ECF No. 79.) Although Plaintiff's Rule 56.1 response does not consistently cite record evidence, the Court considers Plaintiff's sworn statements to the extent they are based on personal knowledge and would be admissible at trial. The Court does not credit unsupported legal conclusions, conclusory denials, or assertions not grounded in the record.

on the floor of the elevator, which later tested positive for marijuana. (Dfts. 56.1 ¶¶ 9, 17–18; Pltf. 56.1 Resp. ¶ 9; Luedtke Decl. Ex. A, 151:14–152:11, 155:7–155:23.)

Plaintiff was then placed in the contraband watch room, where he claims a second strip search occurred. (Dfts. 56.1 ¶ 10; Pltf. 56.1 Resp. ¶ 10; Luedtke Decl. Ex. A, 171:4–171:11, 175:21–180:10.) According to Plaintiff, Sanchez and Ross gave the commands during the alleged second search. (Dfts. 56.1 ¶ 11; Pltf. 56.1 Resp. ¶ 11.) Beadle was "just standing" in the room, did not speak to Plaintiff, and did not make physical contact with him. (Dfts. 56.1 ¶¶ 12–13; Pltf. 56.1 Resp. ¶¶ 12–13; Luedtke Decl. Ex. A, 177:6–177:14, 178:20–180:16, 206:20–207:11.) Plaintiff remained in the contraband watch room for more than forty-eight hours before he was returned to SHU. (Dfts. 56.1 ¶ 19; Pltf. 56.1 Resp. ¶ 19; Luedtke Decl. Ex. A, 189:7–190:17, 194:2–194:4.)

While Plaintiff was in SHU, he was issued a misbehavior report for the July 18 incident, charging him with refusing a direct order, drug possession, possession of contraband, making a false statement, and smuggling. (Dfts. 56.1 ¶ 21; Pltf. 56.1 Resp. ¶ 21.) On August 12, 2019, Plaintiff pleaded guilty to marijuana use related to the July 17 incident and received a thirty-day sanction; Plaintiff disputes only the characterization of that sanction, stating that it was keep-lock rather than SHU. (Dfts. 56.1 ¶ 22; Pltf. 56.1 Resp. ¶ 22.) On September 30, 2019, following a not-guilty plea, Plaintiff was found guilty of all charges related to the July 18 incident and received forty-five days in SHU, forty-five days loss of packages, forty-five days loss of commissary, forty-five days loss of phone privileges, and ninety days loss of visits. (Dfts. 56.1 ¶¶ 23–24; Pltf. 56.1 Resp. ¶¶ 23–24.)

Plaintiff transferred to Lakeview Correctional Facility on or about October 24, 2019. (Dfts. 56.1 ¶ 25; Pltf. 56.1 Resp. ¶ 25; Luedtke Decl. Ex. J.) While at Lakeview, Plaintiff claimed to have successfully appealed the dispositions of both disciplinary matters, though his guilty plea for

3

marijuana use on July 17, 2019 was not reversed. (Dfts. 56.1 ¶ 26; Pltf. 56.1 Resp. ¶ 26; Luedtke Decl. Ex. A, 203:15–204:13, Ex. K.)

Defendants contend that Plaintiff never filed a grievance about the July 18 strip search, pointing to his deposition testimony that he remembered filing grievances "but not so much about Beadle and them." (Dfts. 56.1 ¶ 27; Luedtke Decl. Ex. A, 209:22–210:11.) The only grievance Plaintiff identified in connection with the July 18 incident, according to Defendants, concerned his continued SHU confinement after he challenged the disciplinary charges, not the strip search itself. (Dfts. 56.1 ¶ 28; Luedtke Decl. Ex. A, 209:22–210:11.) Defendants add that any such SHU-related grievance was filed only after Plaintiff transferred to Lakeview, ninety-eight days after the alleged strip search and seventy-seven days past the deadline to grieve it. (Dfts. 56.1 ¶ 29; Luedtke Decl. Ex. A, 209:22–210:11.) Plaintiff disputes each of these points, asserting that he later recalled additional details after reviewing paperwork he had sent to his girlfriend, and disputing Defendants' timing. (Pltf. 56.1 Resp. ¶¶ 27–29.)

Defendants further contend that Plaintiff did not appeal any grievance determination relating to his SHU sentence, and that the only Central Office Review Committee ("CORC ") appeal from his time in SHU concerned his newspaper subscription. (Dfts. 56.1 ¶¶ 30–31; Luedtke Decl. Ex. M.) Plaintiff counters that he did appeal SHU-related determinations, that he has been waiting on CORC decisions, and that he views CORC as a dead end for most grievances. (Pltf. 56.1 Resp. ¶¶ 30–31.

## II.    Procedural Background

Plaintiff commenced this action on January 24, 2023, asserting claims under 42 U.S.C. § 1983 arising from events at Sing Sing Correctional Facility. (Compl., ECF No. 2.) Defendants moved to dismiss the Complaint on December 22, 2023. (Mot. to Dismiss, ECF No. 32.) The Court dismissed Plaintiff's First Amendment retaliation claim and Fourteenth Amendment procedural

4

due process claim without prejudice, but denied dismissal of Plaintiff's Fourth Amendment claim. (*Id.*) Plaintiff did not file an amended complaint. On November 1, 2024, the Court dismissed with prejudice the claims previously dismissed without prejudice and terminated Defendants Capra, Green, Ross, Ortiz, Manuel, and Venettozzi from the action. (Order, ECF No. 37.) Plaintiff's Fourth Amendment claim against Sanchez and Beadle survived. (*Id.*)

Defendants now move for summary judgment. (Dfts. Mot., ECF No. 80.) In support, they filed a memorandum of law (Dfts. Mem., ECF No. 83) and a Local Rule 56.1 statement (Dfts. 56.1, ECF No. 82). Plaintiff opposed the motion through a sworn affidavit, a response to Defendants' Rule 56.1 statement, and an opposition memorandum (Pltf. Opp., 56.1, and 56.1 Resp., ECF No. 79.) Defendants subsequently filed a reply. (Dfts. Reply, ECF No. 85.)

## LEGAL STANDARD

### I.     Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Benn v. Kissane*, 510 Fed.Appx. 34, 36 (2d Cir. 2013) (summ. order).

Summary judgment is appropriate where a party who bears the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323 (internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). However, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Further, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

Typically, a "nonmoving party's failure to respond to a [Local Civil] Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) ). "This general rule applies equally" to cases involving a *pro se* nonmoving party who has been provided adequate notice of the consequences of failing to properly respond to a summary judgment motion. *Pierre-Antoine v. City of N.Y.*, No. 04-cv-6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006); *see Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund*, No. 03-cv-7421 (KMK), 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005). Nonetheless, the Court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement," *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal citation and quotation marks omitted), and the Court is obligated to construe *pro se* litigants' submissions liberally, *see McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

## II.      Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires an incarcerated individual to exhaust available administrative remedies before bringing a claim under 42 U.S.C. § 1997e(a); *Hayes v. Dahlke,* 976 F.3d 259, 268 (2d Cir. 2020). The Second Circuit has made clear that "[e]xhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews,* 655 F.3d 89, 96 (2d Cir. 2011). Proper exhaustion requires "'exhaustion in compliance with an agency's deadlines and other critical procedural rules.'" *Girard v. Chuttey*, 826 F. App'x 41, 44 (2d Cir. 2020). Plaintiff's remaining Fourth Amendment claim is subject to the PLRA because it arises from an alleged strip search during his incarceration. *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Leon v. City of New York*, No. 13-CV-5407, 2014 WL 3408206, at *3 (S.D.N.Y. July 11, 2014) ("Being subjected to visual strip searches is a grievable offense for which a prisoner must exhaust all administrative remedies.").

New York's grievance process, known as the Inmate Grievance Program, generally provides a three-tiered formal procedure for all grievances. *See Morrison v. Stefaniak*, 523 Fed. Appx. 51 (2d Cir. 2013) (summ. order); *Abdallah v. Ragner,* No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y. Nov. 22, 2013); *see also* 7 N.Y.C.R.R. § 701.5. Under the Inmate Grievance Program, an inmate must first submit a grievance detailing the incident, the actions requested, and the actions the inmate has taken to resolve the complaint within 21 days of the alleged occurrence, to the Inmate Grievance Resolution Committee ("IGRC"). *See* 7 N.Y.C.R.R. § 701.5(a). Inmates may request exceptions to the time limit for filing grievances "based on mitigating circumstances," but no exception will be granted "if the request was made more than 45 days after an alleged occurrence." *Id*. § 701.6(g)(1)(i)(a).

7

For grievances alleging violations of strip-search or strip-frisk policy, DOCCS provides an "expedited procedure for the review of grievances." 7 N.Y.C.R.R. § 701.10. Under that procedure, the superintendent or designee determines whether the allegations, if true, would violate DOCCS strip-search or strip-frisk policy, and an in-house investigation is initiated. *Id*. The superintendent must issue a decision within twenty-five days of receipt of the complaint, absent an extension. *Id*. If the superintendent fails to respond within that period, "the grievant may appeal his/her grievance to CORC"; if the superintendent does respond, the grievant may appeal to CORC "within seven calendar days of receipt of that response." *Id*. Thus, whether under the ordinary grievance process or the expedited strip-search procedure, full exhaustion requires pursuing the matter through CORC.

The PLRA requires exhaustion only of remedies that are "available*." Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative remedy may be unavailable in three circumstances: first, when it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; second, when the scheme is "so opaque that it becomes, practically speaking, incapable of use"; and third, when prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643–44. While these categories are not exhaustive, they "guide the Court's inquiry". *Hall v. Annucci,* No. 19-CV-5521, 2022 WL 3903255, at *6 (S.D.N.Y. Aug. 30, 2022), *aff'd*, No. 22-2031, 2023 WL 7212156 (2d Cir. Nov. 2, 2023).

## DISCUSSION

Defendants argue that summary judgment should be granted because Plaintiff failed to exhaust his administrative remedies under the PLRA. (Dfts. Mem. at 5–10.) The Court agrees.

### I.    Plaintiff Failed to Exhaust His Administrative Remedies

Plaintiff's remaining claim arises from the alleged second strip search on July 18, 2019. (See Compl. ¶ 19.) That claim falls within the PLRA because it concerns prison life and an alleged search inside a correctional facility. *See Porter*, 534 U.S. at 532; *Leon*, 2014 WL 3408206, at *3 ("Being subjected to visual strip searches is a grievable offense for which a prisoner must exhaust all administrative remedies."). DOCCS's ordinary grievance process required Plaintiff to (1) file a grievance within twenty-one days, (2) appeal any unfavorable decision to the superintendent, and (3) appeal any unfavorable superintendent decision to CORC. *See* 7 N.Y.C.R.R. § 701.5. The expedited procedure for strip-search grievances likewise requires a CORC appeal if the superintendent fails to respond within twenty-five days or if the grievant is dissatisfied with the response. *See* 7 N.Y.C.R.R. § 701.10. Plaintiff's submissions invoke a third provision, 7 N.Y.C.R.R. § 701.7, which governs the mechanics of grievance submission by inmates housed in a Special Housing Unit. (Pltf. Opp. at 7.) That provision bears only on how a SHU inmate files an initial grievance; it does not displace the appeal requirements of either the ordinary or the expedited procedure. Under either procedure, Plaintiff had to pursue the alleged strip-search grievance through CORC before filing suit.

The record does not show that he did. Plaintiff testified that he remembered filing grievances but "not so much about Beadle and them," and the grievance he identified at his deposition concerned his continued SHU confinement, not the alleged strip search itself. (Dfts. 56.1 ¶¶ 27–28; Luedtke Decl. Ex. A, 209:22–210:11.) That SHU-related grievance, on Defendants' evidence, was filed only after Plaintiff transferred to Lakeview, ninety-eight days after the strip search and seventy-seven days after the deadline to grieve it had expired. (Dfts. 56.1 ¶ 29; Luedtke Decl. Ex. A, 209:22–210:11; id. Ex. L.) And Plaintiff's CORC records reflect no appeal concerning

the strip search; the only CORC appeal from the relevant SHU period concerned his newspaper subscription. (Dfts. 56.1 ¶¶ 30–31; Luedtke Decl. Ex. M.)

Plaintiff's opposition creates, at most, a dispute over the first step of the grievance process. In his sworn affidavit, Plaintiff states that he filed a grievance concerning the strip search while housed in SHU, naming Sanchez, Beadle, and Ross; that he placed it on his SHU cell gate pursuant to SHU mail procedures; and that Beadle collected it from the gate. (Pltf. Aff. ¶¶ 3–6, ECF No. 79.) He has also submitted a copy of a handwritten grievance, addressed to the July 18 strip search, as an exhibit to his opposition. (Pltf. Opp. Ex. C.) He further states that he wrote to Superintendent Capra about the unanswered grievance, spoke with Capra on or about September 3, 2019, and spoke with the DOCCS Office of Special Investigations ("OSI") on or about September 8, 2019. (*Id*. ¶¶ 7–9.) Defendants raise several objections to the reliability of Plaintiff's account. (Dfts. Reply at 2–4.) The Court need not resolve them. Even crediting Plaintiff's account in full and assuming he filed a timely initial grievance, he does not show that he completed the final step required under either DOCCS procedure: an appeal to CORC.

That omission is dispositive. The PLRA requires "proper exhaustion," including compliance with the agency's deadlines and appeal requirements. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Girard*, 826 F. App'x at 44. Filing an initial grievance does not exhaust a process that provides for further review. See Amador, 655 F.3d at 96. And an inmate who receives no response must still pursue the available appeal, appealing the non-response to CORC. *See Bello v. Long,* No. 15-CV-2148, 2017 WL 4326544, at *3 (S.D.N.Y. Sept. 28, 2017).

Plaintiff's own submissions confirm that he did not complete the grievance process. His Rule 56.1 response, his affidavit, and his opposition brief together describe filing an initial grievance, placing it on his cell gate, watching Beadle collect it, writing to Superintendent Capra, speaking with Capra, and speaking with OSI. (Pltf. 56.1 Resp. ¶¶ 30–31; Pltf. Aff. ¶¶ 4–9; Pltf.

Opp. at 6–7.) Plaintiff's own affidavit characterizes his August 26, 2019 letter to Capra as "addressing said grievance appeal." (Pltf. Aff. ¶ 7.) But that letter was directed to the superintendent, which under the ordinary IGP is the second step, not the final CORC appeal. Even crediting Plaintiff's account, the steps he describes show only an initial grievance and follow-up communications with prison officials. Plaintiff does not identify any CORC appeal, CORC decision, or attempted CORC appeal concerning the alleged strip search. His production of a handwritten strip-search grievance does not change the result because the Court already assumes he submitted an initial grievance. Nor does Plaintiff's SHU-related grievance fill that gap. The remaining claim is a Fourth Amendment claim arising from the alleged strip search, and Plaintiff nowhere states that he appealed a grievance concerning that search to CORC.

Plaintiff has also not shown that a CORC appeal was unavailable to him. Administrative remedies may be unavailable where the process operates as a "dead end," is "so opaque" that no ordinary prisoner can use it, or is "thwarted" by prison officials through machination, misrepresentation, or intimidation. *Ross*, 578 U.S. at 643–44. Plaintiff's account fits none of those categories. By his own telling, he wrote to Superintendent Capra, spoke with Capra, and spoke with OSI, conduct showing that he was able to pursue the matter beyond his initial cell-gate submission, not that any official prevented him from appealing. He does not state that he requested appeal forms and was denied them, that officials refused to process a CORC appeal, that he attempted to appeal and received no response, or that anyone threatened or misled him about his ability to appeal.

Plaintiff's reliance on SHU mail procedures does not change the analysis. Plaintiff argues, citing *Zulu v. Barnhart*, No. 16-CV-1408, 2019 WL 2997226 (N.D.N.Y. Apr. 22, 2019), report and recommendation adopted, 2019 WL 2150628 (N.D.N.Y. May 17, 2019), that because SHU inmates must place grievances on their cell gates for staff collection, he lost control of the

grievance once an officer picked it up, and that the absence of any official record corroborates rather than undermines his account. (Pltf. Opp. at 7.) *Zulu* does not aid Plaintiff here. There, the court found a factual dispute where the plaintiff claimed that he timely submitted grievances from SHU, but those grievances were not filed after he handed them to staff, making the IGP not "actually available" to him. *See Zulu*, 2019 WL 2997226, at *13. That reasoning may support Plaintiff's position that he submitted an initial grievance. But the Court already assumes, for purposes of this motion, that Plaintiff did so. The problem is that Plaintiff has not shown that he appealed the alleged strip-search grievance to CORC. *Zulu* does not hold that an inmate who receives no response to a grievance is automatically excused from pursuing the remaining available steps of the grievance process. *Id.* The cell-gate procedure may explain why Plaintiff believes his initial grievance was not processed. It does not explain why he never appealed the alleged strip-search grievance to CORC, particularly after he claims to have followed up with Superintendent Capra and OSI.

Plaintiff's assertion that CORC is a "dead end" fails as well, and it is contradicted by his own filing. In response to Defendants' paragraph 31, Plaintiff states that CORC "serves as a dead end for most grievances and has a response time of countless years." (Pltf. 56.1 Resp. ¶ 31.) But one paragraph earlier, responding to paragraph 30, Plaintiff states that he "did indeed appeal grievance determinations related to S.H.U. and has been waiting for CORC's decisions as with many other grievances filed by Plaintiff over the years." (*Id*. ¶ 30.) That assertion undercuts Plaintiff's position. It shows that Plaintiff knew how to appeal to CORC and had done so before. A party cannot defeat summary judgment by contradicting himself within the same submission. And the documentary record corroborates the paragraph 30 version: Defendants' evidence reflects that Plaintiff appealed an unrelated grievance regarding his newspaper subscription to CORC during the relevant SHU period. (Dfts. 56.1 ¶ 31; Luedtke Decl. Ex. M.) A generalized complaint

that CORC is slow or ineffective does not establish unavailability in any event. *See Massey v. Sapp*, No. 19-CV-11902, 2021 WL 4461825, at *4 (S.D.N.Y. Sept. 29, 2021) (lack of successful appeals is insufficient to show that a grievance procedure amounted to a dead end). On this record, CORC was plainly available to Plaintiff: he used it.

Finally, neither Plaintiff's contact with OSI nor his later disciplinary reversal establishes exhaustion. Plaintiff states that his letter to Capra prompted an OSI investigation and that the charges related to the incident were reversed in December 2019 and that he was acquitted of all charges in January 2020. (Pltf. Aff. ¶¶ 7–12.) But an OSI investigation, a disciplinary appeal, and a grievance concerning an allegedly unconstitutional strip search are distinct processes, governed by separate regulatory schemes, and pursuit of one does not exhaust another. *See Macias v. Zenk*, 495 F.3d 37, 43–44 (2d Cir. 2007). The PLRA required Plaintiff to exhaust the administrative remedies available for the strip-search claim itself; neither an investigative referral to OSI nor the later reversal of his disciplinary charges satisfies that requirement.

Accordingly, even assuming Plaintiff submitted a timely initial grievance concerning the alleged July 18 strip search, the record shows that he did not complete the DOCCS grievance process by appealing to CORC, and he has not shown that the CORC process was unavailable to him. Plaintiff therefore failed to exhaust his administrative remedies. Because the PLRA bars unexhausted claims from proceeding in federal court, Defendants are entitled to summary judgment on the remaining Fourth Amendment claim. The Court need not address Defendants' remaining arguments concerning Beadle's personal involvement or qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED, and Plaintiff's remaining Fourth Amendment claim is dismissed without prejudice for failure to

exhaust administrative remedies.  The Clerk of Court is respectfully directed to terminate the

motion at ECF No. 80, enter judgment in favor of Defendants, and close this case.  The Clerk

of Court is further instructed to mail a copy of this Opinion to pro se Plaintiff and show

service on the docket.

Dated:    June 9, 2026
          White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

14